# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JAMES WILLIAM LULL,<br><br>        Debtor. | Case No. 06-00898<br>Chapter 7 |
| ALICE GORDON,<br><br>        Plaintiff,<br><br>vs.<br><br>WILLIAM HANCOCK<br><br>        Defendant. | Adv. Pro. No. 10-90080 |
| WILLIAM HANCOCK,<br><br>        Counterclaimant,<br><br>vs.<br><br>ALICE GORDON,<br><br>        Counterclaim<br>        Defendant. | **MEMORANDUM OPINION** |

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an adversary proceeding in bankruptcy. Fed. R. Bankr. P. 7001. The lawsuit was originally filed by Plaintiff Alice Gordon on March 17, 2010, in the Fifth Circuit Court of the State of Hawaii. On May 13, 2010, Defendant William Hancock removed this action from the state court to this bankruptcy court.

Jurisdiction exists under 11 U.S.C. § 1334(b), because the claims of the parties are related to the underlying bankruptcy case, in which the debtor is James Lull.

For purposes of 28 U.S.C. § 157, this is a non-core matter. All claims arise under state law. Both parties have consented to the entry of orders and judgments by the bankruptcy court. See Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 584 (1985).

James W. Lull ("Lull"), the debtor in the underlying bankruptcy case, is not a party. Lull died in 2009. At the time of his death, he was awaiting sentencing in the United States District Court for the District of Hawaii, No. 08-00564 SOM, for fraud related to his bankruptcy case.

U.S. Bankruptcy Court - Hawaii #10-90080 Dkt # 41 Filed 07/15/11 Page 2 of 19

Plaintiff seeks a money judgment against Defendant, based upon promissory notes in favor of Plaintiff and upon allegations that Defendant was a co-conspirator of Lull in cheating and defrauding Plaintiff. Plaintiff's complaint contains four counts: Count I - Breach of Fiduciary Duty; Count II - Fraud and/or Constructive Fraud; Count III - Assumpsit; and Count IV - Investment Advisor Liability.

Defendant denies that he owes any sum to Plaintiff, and alleges, by way of counterclaim, that Plaintiff was a co-conspirator of Lull and that she should be held liable for the losses suffered by Defendant and all of Lull's defrauded creditors.

The matter was tried before the court on April 4 and 5, 2011. Plaintiff was represented by Scott I. Batterman, Esq., of Clay Chapman Iwamura Pulice & Nervell. Defendant was represented by Timothy J. Hogan, Esq. On May 5, 2011, both parties submitted post-trial briefs.

## II. FACTS

Plaintiff Alice Gordon was born in 1926. She has been a widow since 1982. She estimates her net worth in 1996, shortly before she met Lull, to have been between $6 and $7 million. On Kauai, in 1997, Plaintiff was introduced to Lull by a friend of hers. Real estate related business dealings between Plaintiff and Lull

3

started shortly thereafter.

At all relevant times, Defendant was a licensed CPA in the state of Hawaii. Defendant became acquainted with Lull in 1994 and 1995, when they both had offices in the same Kauai building. Lull was then working as a mortgage broker, for or with an entity known as U.S. Financial Mortgage Corp.

Plaintiff and Defendant became acquainted in early 1998. In 1997, because of his divorce and a debt owed to the estate of a deceased friend, Defendant applied to Lull for a home equity loan. Lull told Defendant that there was not sufficient equity in the home to support such a loan. Lull suggested a loan from a private party. The private party was Plaintiff. Lull assured Plaintiff that Defendant was a 'golden credit risk'. On January 28, 1998, Defendant borrowed $420,000 from Plaintiff. The note related to this loan is Exhibit 1. In fact, Defendant received only $350,000. The $70,000 difference was a loan fee that the parties have been unable to explain. Either the $70,000 all went to Lull, or it was divided between Lull and Plaintiff, with Lull receiving $29,000. Defendant testified that he 'probably' would have gone ahead with the loan in any event, so the exact details of the loan fee are not of importance.

The loan was secured by the assets of Defendant's accounting firm, Hancock and Company, Inc. Defendant is in default in payments on the loan.

4

By stipulation, the parties agree that, as of March 31, 2011, the balance owing was $150,758.51. According to Defendant's Exhibit 2059, that sum represents $125,154.68 in principal and $25,603.83 in interest. The most recent payment on account of that loan was made on February 16, 2010, in the amount of $1,113.21. Exhibit 2059.

Defendant argues all sums owing are now barred by the statute of limitations.

An unwritten condition of the loan from Plaintiff to Defendant was that Defendant would prepare Plaintiff's annual income tax returns, free of charge. Plaintiff is well organized and kept detailed business records. She was so organized that she sent to Defendant's accounting firm her own spread sheets, rather than completing the tax organizer form sent to her and all clients by that firm.

Plaintiff kept two sets of spread sheets. One set included interest payments received from Lull. The other set, the one provided to Defendant for preparation of Plaintiff's income tax returns, did not disclose interest payments that she received from Lull. Defendant was unaware of the fact that he was being given inaccurate information by Plaintiff, for use in the preparation of her income tax returns.

5

U.S. Bankruptcy Court - Hawaii    #10-90080    Dkt # 41    Filed 07/15/11    Page 5 of 19

Plaintiff and Defendant may have discussed, between themselves, their dealings with Lull, but Defendant's professional services to Plaintiff were only the preparation of her income tax returns. Plaintiff did not rely upon Defendant in making decisions about whether or not to follow Lull's recommendations.

Both Plaintiff and Defendant were closely involved with Lull, but neither knew that he was operating a large Ponzi scheme, until close to the time of the filing of Lull's bankruptcy petition on December 8, 2006.

Plaintiff suffered substantial losses as a result of her dealings with Lull. Defendant, because of his connections to Lull, was involved in many of these transactions. Defendant did not knowingly cheat or deceive Plaintiff.

Plaintiff incurred losses on the following transactions involving Lull:

Plaintiff received only $5,000 of the $475,000 sales price of what is described as the Kahili Makai Property.

Plaintiff received none of the proceeds of sale of her Lae Nani property for $310,000.

Plaintiff received none of the proceeds of a $525,000 sale, on March 1, 2001, of a house at 4070 Kaahumanu.

6

Plaintiff sold what is described as her Puamana property on October 1, 2001. She received a $143,985.49 check from escrow. That check was endorsed to Lull. None of that sum was repaid to Plaintiff.

Defendant and Lull were equal co-owners of a corporation called Kauai Lease & Loan, Ltd. ("KLL"). KLL was the managing partner of an entity called Kapaa 382 LLC ("K382"). K382 was the owner and developer of an unsuccessful condominium project on Kauai called Kulana. Plaintiff made four unsecured loans, evidenced by promissory notes, to KLL for the benefit of the Kulana project: (1) $219,000 on April 1, 1998 (Exhibit 2); (2) $121,,000 on April 20, 1998 (Exhibit 3); (3) $198,000 on May 11, 1998 (Exhibit 4); and (4) $300,000 on July 2, 1998 (Exhibit 5). These loans, in the total amount of $838,000, were not repaid. All of the notes identify the borrower as KLL. Defendant signed the notes as president of KLL. He did not sign in his individual capacity.

Plaintiff also alleges that she made undocumented loans to KLL and K382, relying upon promises by Lull and Defendant that she would be repaid the loan amounts. Plaintiff's Complaint, Dkt. #1, ¶21. At trial, Plaintiff did not prove the dates or amounts of any such loans.

7

The trustee in bankruptcy in Lull's case successfully pursued both Plaintiff and Defendant. The trustee alleged that Plaintiff was the recipient of transfers and payments from Lull in connection with his Ponzi scheme. In satisfaction of the trustee's claims, Plaintiff agreed to pay $400,000 to the trustee, to reduce her claim against the bankruptcy estate from over $10 million to $4 million, and to pay to the trustee a percentage of any of her recoveries in excess of $500,000 from third parties, presumably including Defendant. Exhibit 23

Defendant and Lull were guarantors of a $9 million debt of K382, the owner and developer of the Kulana condominium project. That debt is known as the 'Mowry Note'. Lull made a $1 million payment on account of the Mowry note, thereby reducing his and Defendant's liability from $9 million to $8 million. This court determined that Defendant was the beneficiary of a preferential transfer by debtor Lull and awarded the trustee a $1 million judgment against Defendant. Exhibit 24

### III. ISSUES

1. Did Defendant owe a fiduciary duty to Plaintiff?

2. Are Defendant's obligations to Plaintiff barred by a statute of limitations?

U.S. Bankruptcy Court - Hawaii   #10-90080   Dkt # 41   Filed 07/15/11   Page 8 of 19

3. Does Defendant have any liability on promissory notes which he signed in a representative capacity, and not personally?

4. Was Plaintiff a co-conspirator with Lull in his Ponzi scheme?

## IV. DISCUSSION

At the outset, it must be remembered that neither Plaintiff nor Defendant is a debtor in a bankruptcy case. Whether or not any of the claims asserted by either party would be dischargeable in bankruptcy is not at issue.

A. Fiduciary Duty

Two facts are undisputed. First, as a result of the January, 1998, $420,000 loan from Plaintiff to Defendant, Defendant was required to and did prepare Plaintiff's income tax returns. Second, Plaintiff did not provide Defendant with accurate information for the preparation of her returns. She omitted certain interest payments from Lull, even though she had spread sheets recording those payments. Plaintiff's reasons for her failure to disclose to Defendant the full extent of her dealings with Lull are unexplained. However, whatever the reasons, Plaintiff cannot now claim that Defendant was her trusted business advisor. Plaintiff concealed important information from Defendant concerning her taxable income. She did not trust him to have that information. Even if Defendant did make some business suggestions to Plaintiff, she did not look upon him as

9

someone she trusted. Absent trust, there was no fiduciary relationship.

B. Statute of Limitations

It is only necessary to address the statute of limitations in connection with the promissory note in the amount of $420,000. That note is Exhibit 1, entitled 'Modification of Promissory Note Agreement'. The note was due, in full, on February 1, 2003. The note was not repaid when due, but Defendant renewed the debt by continuing to make payments on account of the note until February 16, 2010. Exhibit 2059

The Hawaii statute of limitations on a promissory note is six years, and Plaintiff timely filed the complaint, in state court, in this removed adversary proceeding, on March 17, 2010, just over one month after Defendant's last payment. Haw. Rev. Stat. § 657-1 provides that a breach of contract action shall be filed not later than six years after the cause of action arose.[1]

---

[1] Haw. Rev. Stat. § 657-1 states:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
>
> (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A;
>
> (2) Actions upon judgments or decrees rendered in any court not of record

10

U.S. Bankruptcy Court - Hawaii   #10-90080   Dkt # 41   Filed 07/15/11   Page 10 of 19

Plaintiff filed an earlier complaint against Defendant, in state court on December 8, 2006, the same date that Lull filed his bankruptcy petition. That earlier lawsuit was removed to this bankruptcy court by Plaintiff on March 5, 2007. It was assigned Adversary Proceeding no. 07-90010.

Adversary Proceeding no. 07-90010 was dismissed, without prejudice, by a stipulation filed on January 8, 2010. Dkt. #114

The stipulation for dismissal contains the following paragraph:

> "IT IS FURTHER STIPULATED AND AGREED, that <u>for a period of one year from the filing of this action</u>, with respect to any claims for relief set forth in the First Amended Complaint, any defenses based on the statute of limitations or laches is tolled, such that the filing of the complaint by Plaintiff ALICE GORDON against Defendant WILLIAM HANCOCK during that one year period, alleging the same claims for relief shall be deemed as to those claims for relief to have been filed on December 8, 2006, which is the date that the original Complaint in this matter was filed in the Circuit Court of the Fifth Circuit of the State of Hawaii." (emphasis added).

---

in the State, or, subject to section 657-9, in any court of record in any foreign jurisdiction;

(3) Actions for taking or detaining any goods or chattels, including actions in the nature of replevin;

(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

No weight can be given to this stipulation, because it makes no sense. The statute of limitations is tolled for one year from the filing of 'this action'. The action was filed by Plaintiff on December 8, 2006, so the tolling period would run until December 8, 2007, a date which is over two years before the stipulation was signed, on January 10, 2010. The parties probably intended 'one year from the filing of this stipulation', rather that 'one year from the filing of this action'. The true intent of the parties was not covered by the parties at trial. Whatever the stipulation was intended to mean, it need not be considered, because of Defendant's ongoing payments on the note, through February, 2010.

The filing of the complaint in this adversary proceeding on March 17, 2010, was timely. The testimony and evidence presented at trial show that Defendant continued to make payments to Plaintiff on the loan after it was fully due, on February 1, 2003, and after the stipulation was signed. Defendant's continued payments on the loan and Plaintiff's acceptance of those payments established new promises to pay.

> Hawaii case law provides that:
>
> A new promise by the debtor to pay his debt, whether then barred by the applicable statute of limitations or not, binds the debtor for a new limitations period. The promise may be express or implied . . . . The promise may be implied from an express acknowledgment of the debt or from part payment thereof.

12

> However, an express acknowledgment of the debt or part
> payment thereof is only prima facie evidence of a new promise
> which may be rebutted by other evidence and by circumstances
> under which it is made.

First Hawaiian Bank v. Zukerkorn, 2 Haw. App. 383, 385, 633 P.2d 550, 552 (Haw. App. 1981).

Defendant offered no proof that his continuing payments were not acknowledgments of the debt.

The payments that Defendant made to Plaintiff on account of this loan, until February 16, 2010, were his acknowledgments that the debt existed, and that he understood his obligation to repay it. This new promise to pay, must be shown to have been made within six years of the filing of the action. Mun Seek Pai v. First Hawaiian Bank, 57 Haw. 429, 435, 558 P.2d 479, 482 (1977).

The evidence shows that Plaintiff received a second large principal payment of $100,000 plus interest on December 8, 2003 (Exhibit 2046), ten months after the loan was due in full. As a result of the large principal payment, Defendant received a partial release of the collateral securing the loan. Exhibit 2039. The evidence also shows that Defendant continued to make payments for seven years thereafter, and Plaintiff continued to accept and apply those payments to the balance due and owing. Exhibit 2052. The payments demonstrate that both

parties considered Defendant's liability under the note to be ongoing. For statute of limitations purposes, each of Defendant's payments was a new promise to pay. The new promise will have the effect of fixing a new date from which the statute of limitations starts running. Id.

The payments made by Defendant, up to the final payment on February 16, 2010, renewed his original obligation. Because of Defendant's continuing payments, the statute of limitations began to run anew on February 16, 2010. Plaintiff, who filed her complaint in this removed adversary proceeding on March 17, 2010, filed it well within the applicable six year statute of limitations.

The parties stipulated at trial that the amount due and owing on the loan was $150,758.51 as of March 31, 2011, with $125,154.68 attributed to principal and $25,603.83 to interest. Judgment will be entered in favor of Plaintiff on the loan for $150,758.51 plus interest from and after March 31, 2011.

C. Promissory Notes Signed by Defendant in a Representative Capacity

As described above, Plaintiff holds four promissory notes of KLL, on which her losses amount to $830,000. All of the notes, Exhibits 2, 3, 4, and 5, are signed by Defendant, as president of KLL. Lull and Defendant were the owners of KLL. However, the evidence does not demonstrate that Defendant intended to be personally liable for the amounts due, that Defendant is the *alter ego* of KLL, or

that Plaintiff reasonably relied on any promise of Defendant that he would be personally liable.

Judgment will be entered that Plaintiff is not entitled to recover anything from Defendant on the KLL notes.

D. Plaintiff as a Co-conspirator with Lull

Plaintiff did business with Lull, and failed to disclose some of those dealings, at least to Defendant and to the Internal Revenue Service. Her motivations for the non-disclosure have not been explained. However, Plaintiff also suffered substantial losses as a result of her dealings with Lull. The dealings with Lull also resulted in an expensive, for Plaintiff, settlement with the trustee in bankruptcy in Lull's case.

Defendant has failed to prove that Plaintiff had knowledge of Lull's Ponzi scheme before public disclosure. There is no factual or legal basis upon which to hold that Plaintiff is liable to Defendant or any of Lull's other creditors for their losses related to doing business with Lull. On Defendant's counterclaim, judgment will be entered in favor of Plaintiff.

E. Conclusion

Plaintiff and Defendant have both suffered because of their dealings with Lull. Plaintiff has suffered greater financial losses than Defendant, but Defendant

U.S. Bankruptcy Court - Hawaii   #10-90080   Dkt # 41   Filed  07/15/11   Page 15 of 19

motivations for the non-disclosure have not been disclosed. However, Plaintiff also suffered substantial losses as a result of her dealings with Lull. The dealings with Lull also resulted in an expensive, for Plaintiff, settlement with the trustee in bankruptcy in Lull's case.

Defendant has failed to prove that Plaintiff had knowledge of Lull's Ponzi scheme before public disclosure. There is no factual or legal basis upon which to hold that Plaintiff is liable to Defendant or any of Lull's other creditors for their losses related to doing business with Lull. On Defendant's counterclaim, judgment will be entered in favor of Plaintiff.

E. Conclusion

Plaintiff and Defendant have both suffered because of their dealings with Lull. Plaintiff has suffered greater financial losses than Defendant, but Defendant has been greatly harmed through 'guilt by association' with Lull.

Evidence and testimony at trial proved that Defendant prepared Plaintiff's income tax returns, and that Plaintiff failed to disclose to Defendant some income received through payments from Lull. Defendant was Plaintiff' income tax return preparer, but he was not a trusted investment advisor upon whom Plaintiff relied in making investment decisions.

Defendant did not owe a fiduciary duty to Plaintiff or defraud her. Both

U.S. Bankruptcy Court - Hawaii   #10-90080   Dkt # 41   Filed 07/15/11   Page 16 of 19

has been greatly harmed through 'guilt by association' with Lull.

Evidence and testimony at trial proved that Defendant prepared Plaintiff's income tax returns, and that Plaintiff failed to disclose to Defendant some income received through payments from Lull. Defendant was Plaintiff's income tax return preparer, but he was not a trusted investment advisor upon whom Plaintiff relied in making investment decisions.

Defendant did not owe a fiduciary duty to Plaintiff or defraud her. Both Defendant and Plaintiff were victims of Lull's shady dealings.

Plaintiff is entitled to recover from Defendant the balance owing on the promissory note, Exhibit 1. Defendant's payments on that note continued into February, 2010, and this lawsuit was filed in March, 2010. This lawsuit is not untimely, for statute of limitations purposes. Furthermore, the parties have agreed that, as of March 31, 2011, the balance due on the note was $150,758.51, including principal and interest. Plaintiff is entitled to recover that sum, plus accruing interest, from Defendant.

Defendant will recover nothing by his counterclaim against Plaintiff.

Defendant seeks equitable subordination of Plaintiff's claim against the Lull bankruptcy estate to Defendant's claim. Both parties were Lull's victims. There is no basis for subordinating Plaintiff's claim to that of Defendant. Defendant

failed to prove that he suffered any financial loss because of the inaccuracy of Plaintiff's income tax returns.

Defendant testified that he 'probably' would have gone ahead with the loan documented by Exhibit 1, even if he had known about the $70,000 loan fee. Therefore, the loan fee has no effect upon Defendant's liability on the note. The testimony of the parties at trial demonstrated that neither of them is aware of the exact amount or disposition of the loan fee. Under these circumstances, Defendant cannot claim to have been the victim of unfair and deceptive trade practices, pursuant to Hawaii Revised Statutes 480-2.

Defendant failed to prove that Plaintiff was a partner in Lull's Ponzi scheme. Her losses resulting from her dealings with Lull are in the millions of dollars.

Finally, there is no basis for an award to Defendant and against Plaintiff of punitive damages.

This lawsuit arises from unfortunate circumstances. Both Plaintiff and Defendant suffered substantial losses as a result of the dealings with Lull, the debtor in the underlying bankruptcy. Lull was proven to have been criminally dishonest with his creditors. However, Lull is deceased, so neither he nor his bankruptcy estate will be a source of meaningful recovery for Plaintiff and

U.S. Bankruptcy Court - Hawaii   #10-90080   Dkt # 41   Filed 07/15/11   Page 18 of 19

Defendant. Understandably, these parties seek someone, in addition to Lull, to blame for their losses. The trial proved that they both incurred losses, were both victims of Lull, and were not the cause of each other's losses.

Judgment will be entered in Plaintiff's favor on the Exhibit 1 promissory note. Plaintiff will recover nothing on the rest of her claims. Defendant will recover nothing on his counterclaim.

Dated: JUL 15 2011

*Lloyd King*
Lloyd King
United States Bankruptcy Judge

18

U.S. Bankruptcy Court - Hawaii  #10-90080  Dkt # 41  Filed 07/15/11  Page 19 of 19